# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IN RE: HURRICANE IDA CLAIMS

## ORDER REGARDING SETTLEMENT OF FORMER MMA CASES

The Court recently learned that McClenny, Mosely & Associates ("MMA"), a debtor in bankruptcy in the Bankruptcy Court for the Southern District of Texas, has taken the position in that Court that it is entitled to recover fees and/or costs from its former cases pending in this District. As a result, that Bankruptcy Court has issued numerous Preliminary Injunctions against successor firms requiring those firms to hold in trust a 33.3% attorney's fee and any costs claimed by MMA. These developments have created added difficulties in resolving cases in the Court's Streamlined Settlement Program, because Plaintiffs' firms believe they are bound by the Bankruptcy Court's orders to embargo fees and costs from settlements in this District. They are not.

The Chief Magistrate Judge has issued Orders in two Hurricane Ida cases in this District making clear that MMA voluntarily and knowingly waived and forfeited whatever rights it may have had in fees and/or costs in its former cases in this District before it declared bankruptcy. *See Ricks v. Imperial Fire & Cas. Ins. Co.*, Civ. A. No. 23-cv-02844 (E.D. La.)(rec. doc. 51); *Foskey v. American Modern Property and Casualty Insurance Company*, Civ. A. No. 23-cv-5316 (Dec. 12, 2024)(rec. doc. 21)(link to Orders attached). The Court has held that, because of this pre-petition waiver of rights, no portion of attorneys' fees or costs from

cases pending in this District can be considered property of the MMA bankruptcy estate and that the Bankruptcy Court's requirement that successor firms hold such fees and costs in trust is inapplicable to cases pending in this District.

This Order is intended to notify parties, their counsel, and the Court's appointed neutrals that (1) no portion of settlement proceeds is required to be held in trust in this District and (2) insurers should immediately cease insisting on listing MMA as a payee on settlement checks, as that entity has no rights to fees and/or costs in this District by virtue of its knowing and voluntary pre-petition waiver of said rights.

**IT IS SO ORDERED.**

**NEW ORLEANS, LOUISIANA,** this ___19th___ day of December, 2024.

For the en banc court:

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

STEPHEN RICKS                                                CIVIL ACTION

VERSUS                                                       NUMBER: 23-2844

IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY                 SECTION: "R" (5)


**ORDER AND RECOMMENDATION**

Pending before the Court pursuant to an order of reference from the District Judge are two motions: a Motion for In Camera Approval and Allocation of Fees and Expenses and a motion to seal that motion (rec. docs. 17 and 17-3). In connection with Plaintiff's request for oral argument on those motions, this Court issued an Order on January 26, 2024 for oral argument. (Rec. doc. 25). That Order directed that the principal of McClenny, Moseley & Associates ("MMA"), Zach Moseley, and/or MMA's counsel appear and show cause why, by virtue of the numerous established instances of its misconduct in this District (as catalogued in the Order and set forth in part below), MMA has not forfeited the right to recover fees and/or costs from its former clients who settle their claims pro se or with the assistance of new counsel. (*Id.*). It was the Court's stated intention to address this question in the first instance (1) on a docket-wide basis and (2) pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and/or the inherent authority of the Court.

The show-cause hearing was set for February 21, 2024. The aforementioned Order provided that MMA could file a brief in support of its position no later than February 14, 2024, which it did. (Rec. doc. 36). The Court further ordered that, along with that brief, MMA was to produce to the Court all documentation associated with its prior representation of the plaintiff in this case, Stephen Ricks, including, but not limited to, any contract for

representation and demand letter(s) sent to Ricks' insurer.  (*Id.*).  In addition, MMA was to provide documentation of all costs expended in this matter and explain to the Court in its brief how this case was obtained by the firm.  (*Id.*).

In its responsive brief and at the show-cause hearing, MMA argued that, because it was not seeking a fee or reimbursement of costs in <u>this</u> case, there was no live case or controversy remaining in the case, such that proceeding with a hearing to determine MMA's rights to recover fees and/or costs in other cases pending in this District would violate Article III of the United States Constitution:  "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold [parties] accountable for legal infractions."  (Rec. doc. 39)(quoting *TransUnion L.L.C. v. Ramirez*, 594 U.S. 413, 423 (2021)).

At the show-cause hearing, the Court indicated its tendency to agree with MMA's standing argument and indicated its hesitancy to undertake a docket-wide inquiry in this case for the reasons advanced by MMA in its brief.  At that point, counsel for Plaintiff,[1] for the first time, suggested that, because two of MMA's <u>lenders</u> (Equal Access Justice Fund, LP and EAJF ESQ FUND, LP (hereinafter, the "Funds")) had issued "lien letters" to their firm in every case pending in this District in which MMA was former counsel, a case or controversy persisted in this case, based on the idea that MMA's voluntary relinquishment of the right to recover fees in this case could be construed as a breach of contract by MMA vis-à-vis the Funds, thus exposing Plaintiff's counsel to potential liability to the Funds.

The Court then ordered Plaintiff's counsel to file a supplemental memorandum fully briefing this somewhat novel argument, which they ultimately filed on February 28, 2024.

---

[1]  Plaintiff is represented by the law firm Daly & Black.

(Rec. doc. 45).  Upon receipt of that brief, the Court ordered MMA to file a responsive brief <u>and</u> to produce to the Court a "complete and comprehensive list of every case currently pending in this District in which it intends to seek attorneys' fees and/or costs."  (Rec. doc. 46).

On March 15, 2024, MMA filed its response.  (Rec. doc. 47).  As to the standing argument advanced by Plaintiff's counsel, MMA bolstered its argument that no case or controversy exists here by attaching as an exhibit a letter from counsel for the Funds to MMA's counsel "waiv[ing] and release[ing] their respective security interest in attorneys' fees, if any, owed, due, or owing" to MMA arising out of this matter only.  (Rec. doc. 47-1).

MMA went on to represent that "[w]ith respect to the second part of the Court's Order [supplying the Court with a list of cases pending in this District in which MMA will seek a fee], <u>MMA does not intend to intervene in any cases pending in this Court to seek attorneys' fees or costs</u>."  (Rec. doc. 47) (emphasis added).

The undersigned initially mis-read this last statement as applying to the *Ricks* matter only.  This in turn led the undersigned to issue a second order suggesting that MMA was in violation of the March 6 Order for failing to supply the Court with the list of cases pending in this District in which it intended to seek a fee and ordering the firm to submit such a list within five days.  (Rec. doc. 49).

While MMA had not produced such a list, it was <u>not</u> in violation of the Court's March 6 Order because it had informed the Court that it did not intend to intervene in <u>any</u> pending cases to seeks fees or costs.  In its response to this second order, MMA reiterated that

> as it stated in its March 15 pleading, MMA maintains that there are no EDLA cases in which it intends to intervene or file liens to recover attorney's fees.  As MMA previously explained in response to the Court's March 6, 2024 Order, MMA does not

> intend to intervene in any cases pending in this Court, so there is no list to provide reflecting pending EDLA cases in which MMA intends to seek attorney's fees.

(Rec. doc. 50).

The MMA response went on to note that

> MMA is considering filing lawsuits against Daly & Black and Galindo Law, which MMA believes have breached agreements with MMA and which have taken action that may give rise to various causes of action for relief related to Daly & Black's and Galindo Law's handling of Hurricane Ida claims for former MMA clients.

(*Id.*). The firm then attached a list of cases that appear to be those in which Daly & Black and/or Galindo Law[2] are involved in this District. (*Id.*).

The Court finds that the multiple affirmative statements in multiple briefs filed with this Court that it would not seek to recover fees and/or costs from cases pending here constitutes a voluntary and knowing waiver of any right to do so.

As the Court noted in its January 26 Order initiating the proceedings described above, the intention of the Court in initiating those proceedings was to address a circumstance in this District that has hampered efficient resolution of insureds' claims and taxed the resources of the Court – certain insurers' insistence that settlement checks include MMA as a payee based upon their status as former counsel for settling insureds. The refusal to issue settlement checks without MMA's name as a payee has (1) delayed payments to insureds even after settlement, (2) required unnecessary motion practice seeking court orders that insurers issue checks omitting MMA as a payee, and (3) caused the judges of this Court,

---

[2] The potential claims against Galindo Law are said to be based on the fact that "Galindo Law entered into joint representation agreements with MMA in many cases," which MMA apparently believes Galindo Law may have breached. (*Id.*).

including this one, to make inquiries of MMA's counsel on a case-by-case basis whether MMA intended to seek a fee in individual cases.  This entire process – caused directly by MMA's malfeasance in this District[3] – has been a tremendous drain upon the bar and this Court, and a waste of valuable resources, the most important of which is time.  Considering that hundreds of cases involving former MMA clients remain open in this District, continuing on this path is simply untenable.

The Court now finds, based upon MMA's multiple representations that it does not intend to seek fees or costs in any case now pending in this District, that this tortured process can and should come to an end.

It matters not to the resolution of Hurricane Ida cases in this District that one law firm might sue another law firm for breach of a contract between them.  That potential is of no moment to either insured or insurer.  It is a matter strictly between the various law firms.  It follows then that there is no basis, given MMA's affirmative statement of its intention to walk away from fees and costs from cases pending here, for settling insurers to continue to insist on including that firm on settlement checks.

Similarly, the fact that the Funds have sent "lien letters" to various law firms representing former MMA clients suggesting they have a "perfected security interest in and to the McClenny Moseley & Associates, PLLC, Law Firm Proceeds"[4] in cases involving those clients is not a matter impacting the insureds or insurers.  Whatever dispute arises out of these claims to fees by the Funds will be a dispute between the Funds and a law firm over

---

[3] *See Franatovich v. Allied Trust Ins. Co.*, Civ. A. No. 22-2552, 2023 WL 7005861 (E.D. La. Mar. 16, 2023).

[4] (Rec. doc. 45-1).

some <u>portion</u> of fees received by that law firm.  That dispute will not impact the actual parties to the litigation.

Based upon all the foregoing, the Court finds that MMA has knowingly and completely waived its rights to intervene or otherwise seek to recover fees and/or costs in this or any other lawsuit pending in this District.  This finding is without prejudice to MMA's or the Funds' right to bring whatever claims may exist for breach of contract (or under any other theory) against MMA's successor law firms.  But the Court's finding here does act to remove as an impediment to settlement <u>and payment</u> of settlement proceeds the <u>possibility</u> that MMA could, at some point in the future, seek to intervene for fees and/or costs in any case pending here.  That possibility is now eliminated.

The Court further finds that this case, which has been settled between the parties, should be dismissed as such.  No further case or controversy exists between the parties.  The pending motions – a Motion for In Camera Approval and Allocation of Fees and Expenses and a Motion to Seal that motion (rec. docs. 17 and 17-3) – should be dismissed as moot, given that both MMA and the Funds have waived their respective rights to any recovery in this case.  Accordingly,

**IT IS ORDERED** that the Motion for In Camera Approval and Allocation of Fees and Expenses and the Motion to Seal that motion (rec. docs. 17 and 17-3) be **DISMISSED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that the District Judge enter a 60-day order of dismissal indicating that the case has been resolved by settlement.

**NOTICE OF RIGHT TO OBJECT AS TO THE RECOMMENDATION FOR DISMISSAL**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___5th___ day of _____April_____, 2024.

_____
**MICHAEL B. NORTH**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SHERRY FOSKEY, ET AL.                          CIVIL ACTION


VERSUS                                         NUMBER: 23-5316


AMERICAN MODERN PROPERTY AND
CASUALTY INSURANCE COMPANY                     SECTION: "B"(5)


**ORDER**

The undersigned recently held a settlement conference with the parties in this case. During that conference, an agreement in principle was reached, but certain impediments to final settlement arose that implicate the well-known and numerous misdeeds of Plaintiffs' former counsel, McClenny, Moseley & Associates ("MMA").  In a previous matter in this Court,[1] the undersigned issued an Order – never appealed by MMA – finding that MMA had knowingly and voluntarily forfeited its rights to intervene or otherwise seek to recover fees and/or costs in any case then pending in this District, including this one.  During the aforementioned settlement conference, the Court was made aware of certain pleadings, arguments, and rulings that have recently been made in the adversary proceeding, *MMA Law Firm, PLLC v. Morris Bart, LLC*, pending in the Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Case").[2]

After reviewing the docket of that case and the associated master case, the Court is now aware that MMA has taken the position in the Bankruptcy Court that it never did, nor

---

[1] *Ricks v. Imperial Fire & Cas. Ins. Co.*, Civ. A. No. 23-cv-02844 (E.D. La.).
[2] Case No. 24-03127 (Bankr. S.D. Tex., filed June 6, 2024).

did it intend to, waive or forfeit its rights to recover fees in its former cases pending in this District as of April 5, 2024.  The firm has also apparently taken the position in the Bankruptcy Case that this Court's Order in *Ricks* did not have the effect of forfeiting said rights to fees and/or costs in cases pending here.  Neither of those things is true.

It now seems that, despite this Court's best efforts, MMA's tactics and doublespeak continue to interfere with its former clients' full recoveries, some three years-plus after Hurricane Ida made landfall.  MMA's misrepresentations in the Bankruptcy Case have also apparently resulted in the presiding Judge in that matter issuing a preliminary injunction against Plaintiffs' counsel, Morris Bart, LLC[3] that, among other things, requires

> that, after the entry of this Order, a 33.3% attorneys fee portion of any settlement or award in a Former Case, or, if an attorneys fee portion greater than 33.3% is collected, the amount of attorneys' fees collected, as well as the amount of expenses that MMA claims in that Former Case, shall be held in trust by Morris Bart until further order of this Court. . . .

Case No. 24-03127 (Bankr. S.D. Tex.)(Rec. doc. 23 at 2).  The scope of the term, "Former Cases," as used in the Bankruptcy Court's Injunction is not entirely clear, as it falls within this statement:  "The Debtor asserts that it has an interest in attorney's fees and expenses in numerous cases where the Debtor's former clients are now clients of Morris Bart, LLC ('Former Cases')." *Id.*

What is clear is that the term "Former Cases" and the Bankruptcy Court's Injunction cannot describe or apply to cases in <u>this</u> District in which MMA formerly represented litigants because MMA affirmatively waived and forfeited any rights it might have had to fees and costs in all of those cases before filing its Chapter 11 Voluntary Petition.

---

[3] The Court here has been advised that the Bankruptcy Court has issued similar injunctions against other MMA successor firms.

### I.    MMA's Misdeeds Are Well-Established

In a lengthy Order issued almost two years ago, this Court found that MMA had engaged in an unprecedented pattern of misconduct in this District in connection with its "representation" of thousands of homeowners after Hurricane Ida.  Here is a non-exhaustive summary of what the Court found:

> Since first appearing in this District less than a year ago, McClenny, Moseley & Associates, PLLC ("MMA") and its attorneys, in particular Zach Moseley ("Moseley") and R. William Huye, III ("Huye"), have engaged in a pattern of misconduct on a scale likely never before seen here.  The record in these cases establishes that they have undertaken a brazen, multi-faceted campaign to enrich themselves with ill-gotten contingency fees paid to them by unwitting insurance companies ostensibly on behalf of named insureds that they and their firm did not represent.
>
> They have lied to numerous insurance carriers claiming to represent insureds who had never heard of them; they have invoked appraisal and even filed lawsuits on behalf of people they knew they did not represent; they have, through non-lawyer agents in faraway places, directly solicited insureds who had never previously reached out to them; they have filed cases in multiple districts on behalf of insureds they did represent in which they sued the wrong insurance company; they have paid millions of dollars to an advertising firm to act as their agent to "deliver" pre-screened clients and signed contingency-fee agreements to their firm at a rate of $3,500.00 per contract; they have failed to disclose known conflicts to potential clients; and they have lied to the judge in open court.

*Franatovich v. Allied Trust Ins. Co.*, Civ. A. No. 22-2552, 2023 WL 7005861, at *1 (E.D. La. Mar. 16, 2023).[4]

The *Franatovich* Order goes into great detail (not to be repeated here) describing the numerous schemes MMA employed to mislead clients, insurance companies, and numerous courts in order to unjustly enrich itself.  These misdeeds ultimately resulted in every lawyer

---

[4]  Notably, this Order was never appealed and is a final order.

with a Louisiana law license associated with the MMA firm being suspended and the three federal courts in this state prohibiting the firm from practicing law in those courts. MMA's pending cases were stayed, leaving hundreds of litigants and thousands of clients with unfiled cases adrift and in limbo. The firm's misconduct created untold chaos in the system, caused additional misery and stress for former clients, and directly led to unquantifiable costs in time and money to insurers, attorneys, and the courts.

Even as former clients found new lawyers and cases began to progress through the system, MMA's presence in the background continued to create problems because the firm refused to back off of its potential claims for fees and costs in thousands of cases, despite its documented misconduct. This, of course, substantially slowed the settlement process as successor counsel, mediators, and judges wrestled with how to adjudicate and/or quantify MMA's rights in each and every of its former cases on the docket.

In the face of this untenable situation, the Court took steps to finally address these issues and determine, as a threshold matter, whether MMA had, through its misconduct, forfeited whatever rights it may have had to recover fees and costs from cases involving its former clients in this District.

## II.    The *Ricks* Matter – Rule to Show Cause

To address the ongoing impediments presented by MMA's misconduct and gamesmanship regarding its alleged rights and future intention to claim fees in this District,[5] the Court issued an Order in *Ricks*, setting out its plan to address this fee issue:

---

[5]  In scores of instances (far too many to cite here) MMA was given the opportunity by the undersigned and every other judge in this District to make a claim for fees and costs in a settled case, including *Ricks*. <u>Not one time did it elect to do so</u>. Rather than walk away from any claims for fees and costs on a docket wide basis (as it eventually did in *Ricks*), it elected to slow-play the issue, forcing the judges of this Court to resolve those potential claims on a case-by-case basis – a tedious process that ultimately only further delayed their former clients' recoveries.

The question now before the Court is whether and/or to what extent [MMA's] misconduct should bear upon MMA's right to recover any fees and/or costs from Mr. Ricks' settlement in this case. That question – and the question raised daily in similar motions being filed across this District – cannot be answered without an examination of MMA's conduct across the Court's entire docket. If the Court finds, after notice and opportunity to be heard, that MMA's conduct was egregious enough to disqualify it from the recovery of any fees or costs, its entitlement to such a recovery in <u>this</u> case will be adjudicated. If, on the other hand, the Court finds that MMA retains its rights to recover some amount in fees and/or costs, the Court will undertake to determine the quantum of such recovery in this case and, it stands to reason, in future individual cases in which similar motions are filed.

It is appropriate here, however, to answer the larger question first.

*Ricks*, No. 23-cv-2844 (rec. doc. 25 at 3).

The Court then ordered MMA to appear and show cause as to

why it is entitled to recover fees and/or costs in any case pending in this District (including this one) in light of this Court's findings in *Franatovich v. Allied Trust Insurance Co.*, Civ. A. No. 22-2552, 2023 WL 7005861 (E.D. La. Mar. 16, 2023), that MMA engaged in the following misconduct:

• Employing a roofing contractor to "sign up" cases by inducing homeowners to sign Assignments of Benefits, which MMA then used to misrepresent themselves to multiple insurers (over 850 times) as the policyholder's counsel, when they clearly were not. (*Id.* at **6-7, 14).

• Settling cases on that false premise and endorsing checks without authorization (*Id.* at **13-14, clients Bartel and Rodrigue).

• Filing lawsuits on behalf of homeowners they knew they did not represent. (*Id.* at *14).

5

• Employing an out-of-state "runner" ("Velawcity") to solicit over 4,000 clients – and deliver signed contingency-fee agreements to the firm – at a rate of $3,500.00 per contract, in violation of the Rules of Professional Conduct and, quite likely, Louisiana law. (*Id.*).

• Lying in open court about the Velawcity arrangement. (*Id.* at **12, 14).

• Filing multiple lawsuits against insurers who did not have policies in place with the named plaintiffs. (Id. at *14).

• Causing the judges of this District to stay over 600 pending cases involving MMA due to its misconduct.

• Causing the Court to have to undertake to communicate directly with plaintiffs in those 600+ cases to determine their desires going forward.

• Causing the Court to institute an automatic 120-day stay in any cases involving a former MMA client to provide adequate time for new counsel to vet the case, thus further delaying resolution of their former clients' claims.

*Id.* at 4-5.

Prior to the show-cause hearing, MMA filed a brief in which it affirmatively stated that it was not seeking fees/costs in *Ricks*, which positioned it to argue that the Court could not then adjudicate whether it had waived its rights by its misconduct on a docket-wide basis. Notably for present purposes, the Court then addressed that gambit by ordering MMA "to provide the Court with a complete and comprehensive list of every case currently pending in this District in which it <u>intends to seek</u> attorneys' fees and/or costs." *Id.* (rec. doc. 46)(emphasis added).

In response, MMA filed a brief – but not the list of cases "in which it intends to seek attorneys' fees and/or costs," as ordered by the Court. *Id.* (rec. doc. 47). In that brief, rather

than submit the list ordered by the Court, MMA deflected, with the following statement: "MMA does not intend to intervene in any cases pending in this Court to seek attorneys' fees or costs." *Id.* In a footnote to that statement, MMA explained:

> MMA does not waive any rights, other than to notify the Court that it does not intend to file interventions in any cases in this Court. MMA specifically reserves its right to institute proceedings against successor law firms like Daly & Black to advance any claims it may have for breach of contract, or any other remedy it may pursue under the law, against any firms that have caused MMA redressable harm.

*Id.*

The problem here is that MMA was answering a question the Court did not ask. It was clear the Court was seeking a comprehensive list of every case pending in this District in which the firm "intends to seek attorneys' fees and/or costs," not a list of cases in which it intended to intervene, which is a narrower procedural descriptor. Accordingly, the Court issued a second order, requiring MMA, under penalty of contempt, to provide the list the Court had previously ordered. *Id.* (rec. doc. 49).

In its response to this second Order, MMA made the following representations to the Court:

- "MMA [does] not intend to seek fees in pending EDLA cases but instead intend[s] to pursue successor law firms that have breached agreements with MMA."

- "[A]s it stated in its March 15 pleading, MMA maintains that there are no EDLA cases in which it intends to intervene or file liens to recover attorney's fees."

- "MMA does not intend to intervene in any cases pending in this Court, <u>so there is no list to provide reflecting pending EDLA cases in which MMA intends to seek attorney's fees.</u>"

*Id.* (rec. doc. 50) (emphasis added).  Maintaining its right to later pursue claims against certain law firms (Daly & Black and Galindo Law) for breach of contract, MMA did provide a list of lawsuits pending in this District that it said could be at issue in potential future litigation against those firms.  *Id.* at 3-7.

The Court interpreted this decision by MMA for what it was – a conscious decision by MMA to forfeit any rights it may have had to recover fees and/or costs rather than have to address its misconduct (as detailed in the Court's original Order setting the Rule) and face a decision by this Court sanctioning the firm for that misconduct with a ruling that it had forfeited its rights to fees/costs in this District.  That interpretation was reflected in the Court's Order, which found that the firm had <u>voluntarily</u> and knowingly forfeited and waived any rights it might have had in cases pending in this District, to wit

- "The Court finds that the multiple affirmative statements in multiple briefs filed with this Court that it would not seek to recover fees and/or costs from cases pending here constitutes a voluntary and knowing waiver of any right to do so."

- "The Court now finds, based upon MMA's multiple representations that it does not intend to seek fees or costs in any case now pending in this District, that this tortured process can and should come to an end."

- "It matters not to the resolution of Hurricane Ida cases in this District that one law firm might sue another law firm for breach of a contract between them.  That potential is of no moment to either insured or insurer.  It is a matter strictly between the various law firms."

- "Based upon all the foregoing, the Court finds that MMA has knowingly and completely waived its rights to intervene or <u>otherwise seek to recover fees and/or costs</u> in this or any other lawsuit pending in this District."

- "This finding is without prejudice to MMA's or the Funds' right to bring whatever claims may exist for breach of contract (or under any other theory) against MMA's successor law firms.  But the Court's finding here does act to remove as an impediment to settlement and <u>payment of settlement proceeds</u> the possibility that MMA could, at some point in the future, seek to intervene for fees and/or costs in any case pending here.  <u>That possibility is now eliminated</u>."

*Id.* (rec. doc. 51 at 4-5) (emphasis added).

This Final Order was issued April 5, 2024 and docketed the same day.  *See* 11. U.S.C. § 108(b).

### III. The Impact of the *Ricks* Order in This and Other Former MMA Cases in This District

As a result of the settlement conference in this case, the Court learned that Morris Bart (and others) had been ordered by the Bankruptcy Court in Texas to embargo their fees and any expenses "claimed" by MMA that are associated with any "Former Cases," as described in the Bankruptcy Court's Injunction.  For reasons made clear to the undersigned in reviewing the docket sheet, pleadings, and transcripts from the Bankruptcy Case, Morris Bart had to assume that Court's Injunction reached the fees and costs in this case.

It does not.

MMA came into this Court before it filed its bankruptcy petition and, facing the prospect of being handed a docket-wide sanction finding it had forfeited its rights here

through gross misconduct, affirmatively forfeited those rights – multiple times and in writing. This Court then issued – again, pre-petition – a valid, final Order finding that the firm had, in fact, knowingly and voluntarily waived and forfeited its rights to "<u>otherwise</u> seek to recover fees and/or costs in this or any other lawsuit pending in this District." *Ricks*, Civ. A. No. 23-cv-2844 (rec. doc. 51 at 6) (emphasis added). This Order does not merely limit MMA's rights to file interventions or liens in cases pending here – it unequivocally finds that the Firm waived its rights to seek fees and costs in any way, shape, or form ("to <u>otherwise</u> seek to recover fees and/or costs") in any case in this District.

Accordingly, fees and costs that <u>may</u> have been recoverable by MMA in this District before its forfeiture and this Court's Order in *Ricks* are not and cannot be part of the bankruptcy estate. The Bankruptcy Court, therefore, does not have jurisdiction over any such funds associated with cases in this District. It follows that that Court's Injunction does not reach settlement proceeds, fees, or costs associated with cases pending in the Eastern District of Louisiana. 11 U.S.C. § 541(a)(1); 28 U.S.C. § 1334(e).[6]

It makes no difference to the validity of this Order that MMA reserved its rights to sue successor law firms for damages for breach of contract. Any such claims for breach of contract under state law are for damages, not some non-fungible *res* that must be embargoed to be protected. And even if that were the case, the *res* that would be at issue here – fees and costs from settled cases in this District – has never been part of the bankruptcy estate because MMA disclaimed any rights it might otherwise have had to it before it sought bankruptcy protection.

---

[6] This is true of any former MMA case pending in this District as of April 5, 2024, regardless of which successor firm is or was handling it.

Finally, the Court expresses its serious concern over MMA's misleading statement to the Bankruptcy Court that MMA did not waive its rights to fees and costs in this District.  The firm's only remaining representative, Zach Moseley, recently testified under oath before the Bankruptcy Court that MMA "absolutely" did not voluntarily forfeit its rights to seek fees and/or costs in this District.[7]

That is just not true.

So, to cease MMA's ongoing manipulation of the judicial process and to ensure notice and due process, this Court finds it necessary to order Morris Bart to file this Order in the record of the Bankruptcy Court for the Southern District of Texas.

Based upon all the foregoing, the Court orders that Defendant in this matter, American Modern Property and Casualty Insurance Company, issue two checks in settlement of Plaintiffs' claims.  One check should be made payable to the Plaintiffs alone (and any other loss payee listed on the subject policy of insurance) and the other shall be made payable to Plaintiffs' counsel, Morris Bart, in an amount representing attorneys' fees and costs recoverable by Morris Bart.  Morris Bart is not required, by virtue of this Order and the Court's aforementioned Order in *Ricks*, to hold any amount in trust as potential property of the MMA bankruptcy estate, as fees and costs associated with this case are not and cannot be property of that estate.  Finally, Morris Bart is hereby ordered to file a copy of this Order in the record of the Bankruptcy Court for the Southern District of Texas.

---

[7] *See* Case No. 24-03127-evr, Transcript of Hearing on Preliminary Injunction, July 9, 2024 (rec doc. 42 at 31).

This matter is now resolved and the District Judge will be so informed so that an appropriate order of dismissal may be entered.

SO ORDERED.

New Orleans, Louisiana, this 12th day of December, 2024.

_____
MICHAEL B. NORTH
CHIEF UNITED STATES MAGISTRATE JUDGE